UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TERRENCE W. GLASTER | CIVIL ACTION NO. 14-627 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| CITY OF MANSFIELD, ET AL. | MAGISTRATE JUDGE MARK HORNSBY |

## MEMORANDUM RULING

Before the Court are two motions to dismiss the Plaintiff's claims [Record Documents 7 and 9]. The first motion to dismiss was filed by Defendants, City of Mansfield and the Mansfield Police Department, by and through the City of Mansfield, wherein they argue that the Mansfield Police Department has no capacity to be sued [Record Document 7]. The Plaintiff, Terrance W. Glaster ("Glaster"), has filed a letter with the Court stating that he has no opposition to the granting of this motion [Record Document 12].

Defendant, the City of Mansfield, is correct that the Mansfield Police Department is not a juridical person because it is a department of the City of Mansfield. As such, it has no capacity to be sued. See Lavergne v. Lafayette City Police Dept., No. 13-2146, 2014 WL 931517, at *4 (W.D. La. March 6, 2014). Therefore, the Defendants' motion to dismiss [Record Document 7] is **GRANTED.**

The second motion to dismiss was filed by Defendant Chief Gary Hobbs ("Hobbs") [Record Document 9]. In this motion, Hobbs seeks to dismiss all claims the Plaintiff filed against him in his individual and official capacities. The Plaintiff opposes the Defendant's

Page 1 of  24

motion.  [Record Document 14].  For the reasons that follow, Defendant Hobbs' motion to dismiss [Record Document 9] shall be **GRANTED in part** and **DENIED in part**.

## I.      FACTUAL BACKGROUND.

On December 24, 2012, LaDerrick Hadnott ("Hadnott") was killed by a single gunshot wound to the head at a house on Topeka Street in Mansfield, Louisiana.[1] Mansfield Police Department Sergeant Billy Locke ("Locke") was the lead investigator of the shooting, and Plaintiff alleges that Hobbs directly participated in the investigation.[2] Plaintiff claims that Locke and Hobbs did not collect any physical evidence at the scene beyond the bullet that killed Hadnott.[3] Locke did not collect fingerprints, hair, DNA or other forensic evidence.[4] Locke did not locate the murder weapon and only secured the crime scene for one hour and twenty-eight minutes.[5]

In the days following the murder, Locke interviewed Glaster. Glaster told Locke that he had been watching football at a friend's house the night of the murder and returned home to his family at the end of the game.[6] Glaster provided Locke with his girlfriend's

---

[1]Record Document 13, p.3, ¶ 13.

[2]Id. at ¶16-17.

[3]Id. at ¶18.

[4]Id. at p. 4, ¶19.

[5]Id. at ¶20-21.

[6]Id. at ¶23-25.

contact information, but Locke never followed up with her to verify Glaster's whereabouts on the night of the murder.[7]

Witnesses interviewed by Locke informed him that Hadnott had been involved in a physical altercation with several other people in the days prior to the shooting.[8] On December 1, 2012, Hadnott stabbed a man named Sky Jones at a Mansfield nightclub. Glaster believes the intended target of the stabbing was a man named JaCoby Marshall.[9] Plaintiff states that officers of the Mansfield Police Department, including Locke and Hobbs, knew that Hadnott was accused of stabbing Sky Jones at a nightclub three weeks before he was shot.[10]

On January 24, 2013, the Mansfield Police Department's Crimestoppers program announced a reward for information regarding the shooting.[11] On that same day, Locke and Hobbs interviewed Anthony Jackson ("Jackson"), a police informant who had worked with Locke in the past.[12] Jackson claimed that at 2:30 a.m. on the night of the murder, he was standing outside on the side of his home, when he heard a gunshot and saw  Glaster exit Haddnot's house with a black nine millimeter.[13] Jackson stated that Glaster "got into it" with

---

[7] Id. at ¶26-27.

[8] Id. at p. 5, ¶30.

[9] Id. at p. 6, ¶38.

[10] Id. at ¶39.

[11] Id. at p. 5, ¶32.

[12] Id. at ¶33.

[13] Id. at ¶34.

the victim "at the club", and that the victim "cut [him] up."  Jackson said the Glaster told him, "[T]hat man cut me, I come back to revenge."[14]

However, Plaintiff lists several inconsistencies in Jackson's story. Those inconsistencies include the fact that Jackson claims that he was less than ten feet from the shooter, who was running from the scene to a trail that leads to railroad tracks behind the victim's house, when, in fact, those tracks are across the street from Jackson's house.[15] Jackson also stated that he witnessed these events sometime between 2:00 a.m and 2:30 a.m., after returning home from a nightclub. However, Mansfield does not allow any bars or clubs that sell alcohol to operate on Sunday night or Monday morning between those hours, which is a fact Hobbs and Locke would have known.[16]

On January 25, 2013, the day after Hobbs and Locke interviewed Jackson, Glaster was arrested and charged with Hadnott's murder, based solely upon Jackson's statement. On February 13, 2013, a DeSoto Parish Grand Jury returned a "no true bill" in the case, and Glaster was released.[17]

On February 18, 2013, Locke was contacted by a police informant, who claimed that he could obtain a recording of Glaster admitting to the murder.[18] Locke met with the informant and followed him to a location where the informant planned to meet with

---

[14]Id. at p. 5-6, ¶34.

[15]Id. at p.6-7,  ¶41-42.

[16]Id. at p.7,  ¶43-46.

[17]Id. at ¶48.

[18]Id. at p. 8, ¶51.

Glaster.[19] In a written report, Locke stated that he witnessed Glaster entering the informant's vehicle, and the informant subsequently brought him a recording of what transpired inside the vehicle.[20] The recording is approximately two minutes long and consists of a male entering the vehicle, briefly and spontaneously admitting to the murder, and then exiting the vehicle.[21] Glaster states that the voice on the recording is not his voice.[22]

The case was presented to the Grand Jury, and Glaster believes that the recording was presented therein, along with Locke's testimony identifying Glaster as the person who entered the informant's vehicle.[23] The Grand Jury returned an indictment against Plaintiff, charging him with second degree murder.[24] On March 21, 2013, Plaintiff was incarcerated in the DeSoto Parish Detention Center and his bond was set at $750,000.[25]

At a later court appearance, Locke admitted that he had not actually witnessed Glaster entering the informant's vehicle. Locke admitted that he had only seen someone who he thought resembled the Plaintiff but that he did not actually know whether Plaintiff was the man who entered the informant's vehicle.[26] The prosecution of Plaintiff continued

---

[19] Id. at ¶52.

[20] Id.

[21] Id. at p. 9, ¶56.

[22] Id. at ¶57.

[23] Id. at p. 11, ¶72.

[24] Id. at ¶73.

[25] Id. at ¶74.

[26] Id. at ¶70.

until November 14, 2013, at which time the DeSoto Parish District Attorney's office dismissed the charges against him.[27] Plaintiff's arrest was widely reported in print, television and internet news outlets.[28] During the prosecution of Plaintiff, Hobbs was made the Chief of Police by the City of Mansfield.[29] Plaintiff states that Hobbs knew Locke admitted in sworn testimony that he did not witness the Plaintiff enter the informant's vehicle, as he stated in his written report. Hobbs took no disciplinary action against Locke.[30]

Plaintiff filed suit against the City of Mansfield, the Mansfield Police Department, Locke, and Hobbs alleging that they violated his constitutional rights. Glaster states that "Sgt. Locke knowingly attempted to improperly and maliciously bolster the credibility of the informant by stating in his written report that he personally saw Glaster at the Grove Street residence and indicating that he was an eyewitness to Glaster entering the informant's vehicle."[31] Plaintiff claims that Locke "knowingly and maliciously misled both the Assistant District Attorney and the Court regarding his disclosure of the identity of the informant in order to preserve the strength of the case against Glaster."[32] Hobbs was made aware of Locke's conduct and statements at the May 22, 2013 court appearance but did not take

---

[27]Id. ¶79.

[28]Id. at ¶76.

[29]Id. at ¶78. The Court notes that Glaster's amended complaint does not make clear what Hobbs' position within the police department was prior to his appointment as Chief of Police, including whether he had a supervisory role over Locke or other officers.

[30]Id. at ¶80-81.

[31]Id. at ¶71.

[32]Id. at p. 10, ¶62.

any disciplinary or investigative action against Locke.[33] Plaintiff also claims that additional exculpatory evidence was obtained by Locke after a July 17, 2013 hearing but was never provided to Plaintiff's counsel.[34] Although Glaster described in some detail the way in which the City of Mansfield may be municipally liable to him, the sum total of his statement of the law and application thereof to Hobbs' individual liability is:

> As a result of the above-described conduct, the Defendants deprived Glaster of his constitutional rights to be free from unjust and unreasonable seizure and detention, and to be free from unlawful imprisonment, false arrest, and malicious prosecution pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1988.[35]

This bald recitation of constitutional amendments is all that is provided to the Court regarding Plaintiff's argument that Defendant Hobbs' is in violation of federal law. Additionally, Plaintiff makes several state law claims against Defendants, including the torts of false arrest, false imprisonment, malicious prosecution and civil conspiracy. These, too, lack specific statements of law or analysis of these claims to the facts presented in the amended complaint.

Defendant Hobbs filed the instant Motion To Dismiss [Record Document 9], invoking the affirmative defense of qualified immunity and alleging that there were insufficient facts to support the above claims against Hobbs in his individual and official capacity.  Plaintiff thereafter filed an Amended Complaint [Record Document 13], which included additional

---

[33]Id. at ¶63.

[34]Id. at p. 12, ¶77.

[35]Id. at ¶82.

facts "focusing specifically on the conduct of Chief of Police Gary Hobbs."[36] Plaintiff filed a Response to the Motion To Dismiss [Record Document 14], and Hobbs filed a Reply thereto [Record Document 17].

## II.  MOTION TO DISMISS STANDARD.

Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing the pleader is entitled to relief.  A complaint is not required to contain detailed factual allegations, however, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)(internal marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2008) (internal marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  However, the complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  Id.

As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that

---

[36]Record Document 14, p. 1.

evidence on these material points will be introduced at trial." Rios v. City of Del Rio, 444

F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted).  Moreover,

> a statement of facts that merely creates a suspicion that the pleader might
> have a right of action is insufficient. Dismissal is proper if the complaint lacks
> an allegation regarding a required element necessary to obtain relief.  The
> court is not required to conjure up unpled allegations or construe elaborately
> arcane scripts to save a complaint.  Further, conclusory allegations or legal
> conclusions masquerading as factual conclusions will not suffice to prevent
> a motion to dismiss.

Id. at 421 (internal marks and citations omitted).

In applying the 12(b)(6) standard to this case, the Court would be remiss if it failed

to note that the difficulty of its job was increased considerably by the inadequate approach

the Plaintiff took in his opposition to the motion to dismiss. The Court's efforts to reach a

clear and concise opinion have been frustrated by the Plaintiff's complete failure to brief

the state of the law and its applicability to the facts of this case. In his opposition to Hobbs'

motion to dismiss, the totality of Plaintiff's argument regarding his individual capacity claim

against Hobbs is "Plaintiff shows that the Amended Complaint is sufficient to overcome

Hobbs' objection to being sued on the grounds of qualified immunity, which was raised on

the basis that the Complaint insufficiently pled the facts forming the basis of the individual

capacity claim against him."[37] As discussed above, simply directing the Court to his

amended complaint fails to enlighten the Court about Glaster's argument because the

amended complaint contains only a recitation of constitutional provisions without any

further specific case law or analysis.

---

[37]Record Document 14, p. 1, ¶1.

The Court takes this opportunity to note that Plaintiff amended his complaint **after** Defendant Hobbs filed his motion to dismiss, in which he pled the affirmative defense of qualified immunity. As such, Plaintiff was aware when amending his complaint that he bore the burden of alleging facts sufficient to defeat qualified immunity.

Despite these shortcomings, each of Plaintiff's claims will be addressed in turn.

## III.   LAW AND ANALYSIS.

As discussed above, Plaintiff argues that Hobbs is liable to him in his individual and official capacities for several violations of both federal constitutional law and Louisiana tort law. In his motion to dismiss, Hobbs asserts the affirmative defense of qualified immunity for all of Plaintiff's claims against him individually. Additionally, Hobbs argues that all claims against him in his official capacity as the Chief of Police are redundant because the City of Mansfield, his employer, is also a Defendant in this matter. The Court will address each of these arguments in turn.

### A.   Claims Against Hobbs Individually

#### i.   Section 1983 Claims

Hobbs argues that he is entitled to qualified immunity on all of Glaster's claims against him in his individual capacity, and that Plaintiff has not sufficiently pled specific conduct by Hobbs that satisfies the heightened pleading requirements necessary to defeat qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v.

Callahan, 555 U.S. 223, 231 (2009). Evaluating qualified immunity is a two step process. Michalik v. Herman, 422 F.3d 252, 257-258 (5th Cir. 2005). First, a court must determine whether the Plaintiff has alleged a violation of a clearly established constitutional or statutory right. A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 258 (quoting Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000)). The next step is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. The Plaintiff bears the burden of proving that a government official is not entitled to qualified immunity. Id. It is necessary for the district court in the first instance to thoroughly review each claim of qualified immunity, and the court must undertake analysis as to each of the constitutional claims that form the basis of a Section 1983 action. Handt v. Lynch, 681 F.3d 939, 943-944 (8th Cir. 2012).

Plaintiffs suing government officials in their individual capacities must allege "specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002)(citations omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). A Rule 12(b)(6) motion based on qualified immunity should be granted unless the complaint states facts showing a plausible claim that the Defendant violated the Plaintiff's clearly established federal right. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997).

Under this heightened pleading standard, the Court must examine whether Glaster has presented factual allegations of specific conduct by Hobbs which give rise to a constitutional violation. At this stage in the litigation and for the purposes of this motion, the Court must assume the facts stated by Plaintiff are true. The Court will address each of Plaintiff's Section 1983 claims separately.

### 1.    Fourth Amendment Claims

As discussed above, Glaster has alleged that Hobbs, in his individual capacity, violated his "constitutional rights to be free from unjust and unreasonable seizure and detention, and to be free from unlawful imprisonment, [and] false arrest..."[38] Plaintiff has provided the Court no further guidance as to the types of Fourth Amendment claims he is attempting to articulate. The Court's own research indicates that there is an entire line of cases under the Fourth Amendment that deal with unreasonable seizure and detention by the police prior to an actual arrest. However, the only detentions Glaster describes in his amended complaint are his two arrests on the second degree murder charges. The Court's research also reveals that there is a line of cases under Section 1983 for "false" imprisonment (not "unlawful" imprisonment), but those cases deal with an unlawful conviction and imprisonment. The facts of the case are clear that Glaster was never convicted of a crime.

Again, although given no guidance from the Plaintiff on the specific Fourth Amendment claims he wishes to assert against Hobbs individually, the Court believes that Glaster intends to assert Fourth Amendment violations for the circumstances surrounding

---

[38]Record Document 13, p. 12, ¶82.

his two arrests. Hobbs has asserted the affirmative defense of qualified immunity for these claims.

To establish that an individual defendant violated a Plaintiff's constitutional rights by arresting him, the Plaintiff "must show that the officers lacked probable cause." Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009)(citing Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004)). "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Id. (quoting Resendiz v. Miller, 203 F.3d 902, 903 (5th Cir. 2000)). "If there was probable cause for any of the charges made...then the *arrest* was supported by probable cause, and the claim for false arrest fails."Id. (quoting Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)).

"When an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." Maier v. Green, 485 F.Supp. 2d 711, 718 (W.D. La. 2007)(quoting Rodriguez v. Ritchey, 556 F.2d 1185 (5th Cir. 1977)). An arrest made with a valid arrest warrant is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim. Id. (quoting Thomas v. Sams, 734 F.2d 185, 190-91 (5th Cir. 1984)).

As to his first arrest, Plaintiff's amended complaint states that "...Plaintiff was arrested and charged with the murder of Hadnott on January 25, 2013, based entirely on Jackson's statement to Locke and Hobbs."[39] As to his second arrest, Plaintiff states that

---

[39]Record Document 13, p. 7, ¶47.

"[t]he Grand Jury returned an indictment charging Glaster with the second degree murder of LaDerrick Hadnott only after being presented with the recording and/or Sgt. Locke's testimony concerning the circumstances under which the recording was made. On March 21, 2013, Mr. Glaster was incarcerated at the DeSoto Parish Detention Center on the charge of second degree murder..."[40]

Although given the opportunity to amend his complaint, Plaintiff has not alleged that his first arrest was made without a valid arrest warrant. Whether or not there was a valid arrest warrant is the preliminary, pivotal fact that must be alleged for a successful Fourth Amendment false arrest, detention and imprisonment claim. In the absence of any allegations on the point, the Court cannot simply assume that Plaintiff was arrested without a valid arrest warrant. As such, the only alternative for the Court to consider is that he was arrested with a valid arrest warrant, in which case, by law, the arrest was not unconstitutional.

Under the qualified immunity analysis, Plaintiff has failed to allege a violation of a clearly established constitutional or statutory right stemming from his first arrest because he has failed to allege that this arrest was made without a warrant and, thus, unconstitutional. Therefore, because he has failed to meet the first prong of the qualified immunity analysis, the Court need not determine whether Hobbs' conduct was objectively reasonable under the law at the time of the incident. With regards to the Plaintiff's first arrest, qualified immunity will apply to all Fourth Amendment claims against Hobbs individually, and as such, they are dismissed.

---

[40] Id. at p. 11, ¶73.

As to his second arrest, Plaintiff has alleged that Locke "knowingly attempted to improperly and maliciously bolster the credibility of the informant" by lying about witnessing the interaction between the informant and the man in the car.[41] Plaintiff alleges that Locke presented the informant's recording and his improper testimony to the Grand Jury in order to secure an indictment.[42]

The Fifth Circuit has found that "if the facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Craig v. Dallas Area Rapid Transit Auth., 504 Fed. Appx. 328, 332 (5th Cir. 2012)(quoting Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994)(citations omitted)).  The Fifth Circuit has stated that "[t]he chain of causation remains intact, however, if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." Russell v. Altom, 546 Fed.Appx. 432, 437 (5th Cir. 2013)(quoting Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010)). "The chain of causation is broken only where all the facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary..." Id.

Here, Plaintiff has alleged that Locke maliciously misrepresented facts to the Grand Jury to secure an indictment against the Plaintiff. Plaintiff has **not** alleged that Hobbs, the Defendant in this matter, tainted the Grand Jury deliberations in any way. Under the

---

[41]Id. at p.11, ¶71, 72, and 73.

[42]Id.

qualified immunity analysis, Plaintiff has failed to allege a violation of a clearly established constitutional or statutory right stemming from his second arrest because he has failed to allege that Hobbs was able to taint the Grand Jury proceeding. Therefore, because he has failed to meet the first prong of the qualified immunity analysis, the Court need not determine whether Hobbs' conduct was objectively reasonable under the law at the time of the incident. With regards to the Plaintiff's second arrest, qualified immunity will apply to all Fourth Amendment claims against Hobbs individually, and as such, they are dismissed.

### 2.   Fourteenth Amendment Claim

Plaintiff states in his amended complaint that "the Defendants deprived Glaster of his constitutional rights...pursuant to the...Fourteenth Amendment."[43] However, Plaintiff fails to elaborate in any way how Hobbs, in his individual capacity, violated Glaster's Fourteenth Amendment rights. Hobbs argues that any claim against him under the Fourteenth Amendment should be dismissed because he is entitled to qualified immunity.

The Court's own research finds that a Fourteenth Amendment claim can be either a procedural or a substantive due process violation. A procedural due process violation requires that there must have been a deprivation of a person's life, liberty or property by a state actor without adequate process. See Ky. Dep't. of Corr. v. Thompson, 490 U.S. 210, 221-22 (1989). The Due Process Clause of the Fourteenth Amendment also imposes certain substantive limitations on the power of state and local government to deprive individuals of life, liberty or property. Basically, substantive due process bars "certain

---

[43]Record Document 13, p. 12, ¶82.

government actions regardless of the fairness of the procedures used to implement them."
Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)(quoting Daniels v. Williams, 474
U.S. 327, 331 (1986)).   Glaster's amended complaint does not allege any facts related to
Hobbs and the procedure by which Glaster was arrested and prosecuted. The Court will
assume that Glaster's intention is to assert a substantive due process claim under the
Fourteenth Amendment.

Although Plaintiff has not articulated any sort of argument relating to an alleged
violation of his substantive due process rights, the Court's own research finds that there
are facts alleged in his amended complaint that are similar to those in Cuadra v. Houston
Ind. Sch. Dist., 626 F.3d at 810-811, which the Court finds instructive. In Cuadra, the
Plaintiff, Cuadra, was a school employee who was indicted and arrested in connection with
a falsified student drop-out report, which was sent to the State of Texas. 626 F.3d at 810-
811. The district attorney obtained a grand jury indictment, and Cuadra was arrested and
released on bond. That indictment was eventually quashed. Another grand jury
subsequently re-indicted him at a later date, and the district attorney eventually dismissed
that indictment as well. Id. at 811. Cuadra then filed suit against his employer, the Houston
Independent School District, and alleged that he had a Fourteenth Amendment substantive
due process claim based upon his arrests and subsequent prosecution. Cuadra  argued
that under the Fourteenth Amendment, the State cannot knowingly used false evidence,
including false testimony, to obtain a tainted conviction. Id. at 814 (citing Napue v. Illinois,
360 U.S. 264, 269 (1959)). However, the Fifth Circuit found that the Fourteenth

Amendment did not apply to the facts at hand because Cuadra was not **convicted** of a crime.

The Fifth Circuit cited the United States Supreme Court in Albright v. Oliver, 510 U.S. 266. 270-71 (1994), wherein the Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. Instead, the Court found that where there is an explicit textual source of constitutional protection against particular government behavior, that Amendment, and not substantive due process, is the appropriate guide for analyzing the claims. Id. at 273. As such, the Fifth Circuit found that Cuadra's allegations of pretrial deprivation of his rights should not be analyzed under the Fourteenth Amendment for substantive due process because the Fourth Amendment explicitly covers violations of constitutional law prior to a conviction.

In the present matter, as in Cuadra, Plaintiff was never convicted of a crime based on false evidence, and his claims are best addressed under the Fourth Amendment. Plaintiff has failed to allege sufficient facts to support a claim that Hobbs violated substantive due process under the Fourteenth Amendment. If this was indeed the claim Glaster intended to make, he has failed to allege a violation of a clearly established constitutional or statutory right under the qualified immunity analysis. As such, the Court need not determine whether Hobbs' conduct was objectively reasonable under the law at the time of the incident. Hobbs is entitled to qualified immunity on all of the Plaintiff's Fourteenth Amendment claims, and as such, those claims shall be dismissed.

### 3.      Fifth Amendment Claim

Plaintiff states in his amended complaint that "the Defendants deprived Glaster of his constitutional rights...pursuant to the...Fifth Amendment."[44] However, there are no facts alleged in the amended complaint that even hint at a violation of Plaintiff's Fifth Amendment rights.  The Court cannot descern from the record how the Fifth Amendment has been implicated by the facts of this case. Accordingly, these claims are dismissed.

### 4.      Malicious Prosecution under Section 1983

The Plaintiff's final constitutional claim is a claim of malicious prosecution under Section 1983. However, that argument is clearly foreclosed by the Fifth Circuit's holding in Castellano v. Fragozo, 352 F.3d 939, 958 (5th Cir. 2003), where the court held that a freestanding Section 1983 claim based solely on malicious prosecution is not viable. Rather, the Plaintiff must allege that "officials violated specific constitutional rights in connection with a 'malicious prosecution." Id. at 945. The court noted that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection–the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." Cuadra, 626 F.3d at 812. Any attempt to assert a free standing Section 1983 malicious prosecution claim will fail as a matter of law. Id. at 812-813.

Insofar as Plaintiff is attempting make a free standing claim of malicious prosecution against Hobbs, it must fail as a matter of law and will be dismissed. Insofar as Plaintiff is attempting to make a malicious prosecution claim against Hobbs in connection with some

---

[44]Record Document 13, p.12, ¶82.

other constitutional violation, that claim must also fail. As described above, the Court has dismissed all other Section 1983 claims against Hobbs individually, and as such, there are no remaining constitutional violations with which the Plaintiff can connect a malicious prosecution claim. Any such claim must fail and shall be dismissed.

### ii.  Louisiana State Law Claims

In addition to the constitutional claims, Glaster has also asserted a host of state law claims under Louisiana law. Glaster alleges in his amended complaint that the Defendants violated the Louisiana torts of false arrest, false imprisonment, malicious prosecution, and civil conspiracy.[45] Hobbs argues that "all claims" against him in his individual capacity should be dismissed because he is entitled to the protection of qualified immunity.[46] As described above, Glaster's opposition to Hobb's motion to dismiss simply refers the Court to his amended complaint without enunciating any particular argument or analyzing the law in any way. Similarly, Hobbs, in both his motion to dismiss and his reply to Glaster's opposition, invokes the defense of qualified immunity without specifying whether that defense is even applicable to state law claims.[47]

The Court's own research found that in Moresi v. Dep't of Wildlife & Fisheries, 567 So. 2d 1081, 1093 (La. 1990), the Louisiana Supreme Court held that Louisiana law applies qualified immunity principles to state constitutional law claims based on "[t]he same factors that compelled the United States Supreme Court to recognize qualified good faith

---

[45]Record Document 13, p. 15, ¶89.

[46]Record Document 9, p. 6.

[47]See Record Document 9, p.6; Record Document 14, p. 2.

immunity for state officers under § 1983." However, qualified immunity does not apply to Louisiana tort claims. Instead, Louisiana's discretionary immunity statute applies to those claims. Louisiana Revised Statute § 9:2798.1(B) states that "liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Unlike the federal qualified immunity defense, the discretionary immunity statute is not applicable to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct. Id. at (C)(2).

      The trier of fact determines whether, under the facts of the particular case, the officers are entitled to immunity. Miller v. Vill. of Hornbeck, No. 10-1539 (La. App. 3 Cir. 5/11/11); 65 So.3d 784, 788 (citing McManus v. State of La., Dep't. of Wildlife & Fisheries, 09-1158 (La. App. 3 Cir. 3/10/10), 33 So. 2d 412).  Louisiana courts have adopted a test to determine whether an official is protected by the statute. First, a court must determine whether a state law, regulation, or policy specifically prescribes the officer's course of action. If the official has no alternatives, then  the discretionary function exception to state liability does not apply. Williams v. City of Monroe, No. 27,065-CA, 27,066-CA (La. App. 2 Cir. 7/3/95) So. 2d 820, 828.  Second, the court must determine whether the challenged action is grounded in political, economic or social policy. Fowler v. Roberts, 556 So. 2d 1, 15 (La. 1989). An officer's use of policy-based discretion protects him from state tort liability. Williams, 658 So. 2d at 828. The burden falls to the government to prove the application of the statute. Batton v. Georgia Gulf, 261 F. Supp. 2d 575, 598 (M.D. La. 2003).

Here, the Court need not apply the above test to the facts at hand. The Plaintiff has alleged several times in his amended complaint that Hobbs and the other Defendants engaged in fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct in the arrest, investigation, imprisonment and prosecution of Glaster. Accordingly, under the discretionary immunity statute, Plaintiff has defeated a defense of discretionary immunity because he has alleged facts indicating that Hobbs acted in a fraudulent, malicious, intentional, willful, outrageous, reckless or with flagrant misconduct.[48] Therefore, Defendant Hobbs' motion to dismiss Plaintiff's Louisiana state tort claims shall be denied.

### B.   Claims Against Hobbs in his Official Capacity.

Hobbs argues that all claims against him in his official capacity should be dismissed because they are redundant. Hobbs notes that because Plaintiff has named the City of Mansfield, his employer, as a Defendant, there is no need to file claims against him in his official capacity. Plaintiff argues that there is no requirement that redundant claims be dismissed and that Rule 12(b)(6) does not address the redundancy of claims, only their validity.[49]

"Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than

---

[48]The Court notes that Hobbs has not moved the Court to dismiss Plaintiff's state law claims on any basis other than the defense of qualified immunity. As such, the Court has limited itself to a review of those claims under the discretionary immunity statute.

[49]Record Document 14, p. 2.

name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)(citations omitted). District courts in Louisiana have found that "[w]hen the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant" and appropriate for dismissal. Deshotels v. Vill. of Pine Prairie, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. April 13, 2012). See also Davis v. City of Bunkie, No. 1:06-CV-1266, 2009 WL 102216, at *4 (W.D. La. Jan. 14, 2009); Bennett v. Litton, No. 07-0616, 2008 WL 489319, at *1 (W.D. La. Feb. 20, 2008); Foster v. Guinn, No. 1:06-1478, 2009 WL 700657, at *4 (W.D. La. March 17, 2009); Walker v. City of Bogalusa, No. Civ. A 96-3470, 1997 WL 54665, at *1-2 (E.D. La. Feb. 6, 1997). The Deshotels court reasoned that "[s]ince the local government unit can be sued directly, there is no need to bring official-capacity actions against local government officials, and the plaintiff would not be prejudiced by the dismissal of individual defendants in their official capacities." Id.

In the instant case, the City of Mansfield is named as a Defendant, and the motion to dismiss does not seek the dismissal of the City from the litigation. The claims made by Plaintiff against Hobbs in his capacity as Chief of Police are official capacity claims and redundant of the claims which are brought against the City of Mansfield. Therefore, those claims shall be dismissed.

## III.   CONCLUSION.

For the foregoing reasons,

IT IS ORDERED that Defendants' Motion To Dismiss [Record Document 7] be and is hereby **GRANTED**, and all claims against the Mansfield Police Department are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that Defendant Hobbs' Motion To Dismiss [Record Document 9] be and is hereby **GRANTED in part** and **DENIED in part**. Defendant Hobbs' motion to dismiss all Section 1983 claims made by Plaintiff against Hobbs in his individual capacity is **GRANTED**, and those claims are hereby **DISMISSED WITH PREJUDICE**. Defendant Hobbs' motion to dismiss all Louisiana state law claims made by Plaintiff against Hobbs in his individual capacity is **DENIED**. Defendant Hobbs' motion to dismiss all of Plaintiff's claims against him in his official capacity is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

THUS DONE AND SIGNED on this 26th day of February, 2015.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE